**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BEAZER EAST, INC., | ) | Civil Action No. 91-0408 |
| | ) | |
| Plaintiff, | ) | JUDGE GUSTAVE DIAMOND |
| | ) | |
| v. | ) | |
| | ) | |
| THE MEAD CORPORATION, | ) | |
| | ) | |
| Defendant, | ) | |
| v. | ) | |
| | ) | |
| KOPPERS INDUSTRIES, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

# THE MEAD CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW

Van Carson, Esq. (OH Sup. Ct. #0001324)
Dale E. Stephenson, Esq. (OH Sup. Ct. #0020688)
William V. Shaklee, Esq. (OH Sup. Ct. #0075507)
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower, 127 Public Square
Cleveland, Ohio 44114-1304
(216) 479-8500

David E. White, Esq.
THORP, REED & ARMSTRONG
One Oxford Center, 14th Floor
Pittsburgh, Pennsylvania 15219
(412) 394-2343

Attorneys for The Mead Corporation

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

1. THREE CONTROLLING QUESTIONS OF LAW EXIST. ............................................ 3

2. EACH CONTROLLING QUESTION PRESENTS SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION. ........................................................................ 3

a. Substantial Ground For Difference Of Opinion Exists As To Whether The *Cooper* Issue Is Jurisdictional. ........................................................ 4

b. Substantial Precedent Indicates That The Intervening *Cooper* Decision Supplants All Prior Inconsistent Rulings. ............................................ 6

c. The 1996 Magistrate's Report And Subsequent Order Leave Substantial Ground To Dispute Whether The "Civil Action" Issue Was Ever Resolved In The First Place. ........................................................................ 8

3. LIKELIHOOD OF MATERIALLY ADVANCING THE LITIGATION ........................ 12

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Ad-Vantage Telephone v. GTE Directories Corp.*,
943 F.2d 1511 (11th Cir. 1991) ........ 7

*Arbaugh v. Y & H Corporation*,
___ U.S. ___, 127 S. Ct. 1235 (2006) ........ 4

*Armstrong World Industries, Inc. v. Adams*,
961 F.2d 405 (3d Cir. 1992) ........ 5

*Beazer East, Inc. v. Mead Corporation*,
412 F.3d 429 (3d Cir. 2005), *cert. den.* ___ U.S. ___, 126 S. Ct. 1040 (2006) ........ 8

34 F.3d 206 (3d Cir. 1994) ........ 10, 11

*Bradburn Parent Teacher Store, Inc. v. 3M*,
Case No. 02-7676, 2005 U.S. Dist. LEXIS 15815 (E.D. Pa. July 29, 2005) ........ 3

*Bradley v. United States*,
410 U.S. 605 (1973) ........ 5

*CPC Int'l., Inc. v. Northbrook Ins. Co.*,
46 F.3d 1211 (1st Cir. 1995) ........ 7

*Consolidated Edison v. UGI Utilities*,
423 F.3d 90 (2d Cir. 2005) ........ 6

*Cooper Industries, Inc. v. Aviall Services, Inc.*,
543 U.S. 157 (2004) ........ 1, 6, 9

*Esso Standard Oil v. Rodrigues-Perez*,
Case No. 01-2012, 2005 U.S. Dist. LEXIS 4267 (D.P.R. 2005), *aff'd*. Case No. 05-1722,
2006 U.S. App. LEXIS 14628 (1st Cir. June 14, 2006) ........ 6

*Growth Horizons, Inc. v. Delaware County Pennsylvania*,
983 F.2d 1277 (3d Cir. 1993) ........ 6

*Harter v. GAF Corp.*,
150 F.R.D. 502 (D.N.J. 1993) ........ 4

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) ........ 2, 3, 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................... 5

*Max Daetwyler Corp. v. Meyer*,
575 F. Supp. 280 (E.D. Pa. 1983)........................................................................ 4

*Oneida Indian Nation v. County of Oneida*,
414 U.S. 661 (1974)........................................................................................... 6

*Pambino v. Bailey*,
757 F.2d 1112 (11th Cir. 1985)........................................................................... 7

*Planned Parenthood of S.E. Pa. v. Casey*,
947 F.2d 682 (3d Cir. 1991)................................................................................ 7

*In re Reading Co.*,
900 F. Supp. 738 (D. Pa. 1973)........................................................................... 5

*Royal Ins. Co. of Am. v. K.S.I. Trading Corp.*,
Case No. 04-CV-867, 2006 U.S. Dist. LEXIS 40363 (D.N.J. June 16, 2006) ........................ 3

*Russ-Tobias v. Penn. Bd. of Probation*,
Case No. 04-0270, 2006 U.S. Dist. LEXIS 8062 (E.D. Pa. March 2, 2006)......................... 14

*Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
161 F. Supp. 2d 355 (D.N.J. 2001)...................................................................... 3

*Steel Co. v. Citizens For A Better Environment*,
523 U.S. 83 (1998) ............................................................................................ 5

*United Artists Theater Circuit, Inc. v. Warrington Twp.*,
316 F.3d 392 (3d Cir. 2003)................................................................................ 7

*United Technologies Corp. v. Browning-Ferris Indus.*,
33 F.3d 96 (1st Cir. 1994) ................................................................................... 5

*Western Reserve Properties Corp. v. Shell Oil Co.*,
358 F.3d 678 (9th Cir. 2003)............................................................................... 6

*Zichy v. City of Philadelphia*,
590 F.2d 503 (3d Cir. 1979)................................................................................ 7

## STATUTES

U.S. CONST. ART. II, § 2 ........................................................................................ 5

28 U.S.C. §1292(b)........................................................................................2, 12, 15

42 U.S.C. §2000e-5(f)(3) ........................................................................................ 4

CERCLA §107(a), 42 U.S.C. §9607(a)........................................................................ 8, 10

CERCLA §113(b), 42 U.S.C. §9613(b) ........................................................................4, 5, 10

CERCLA §113(f)(1), 42 U.S.C. §9613(f)(1)........................................................................ 1, 8

## OTHER

MOORE'S FED. PRACTICE (3rd Ed.) §134.21[3][b] ........................................................................ 7

## INTRODUCTION

Beazer's "sole remaining claim" in this case seeks contribution under CERCLA §113(f)(1), 42 U.S.C. §9613(f)(1). MEMORANDUM AND ORDER OF COURT dated July 13, 2006 (the "INTERLOCUTORY ORDER") at 4. Mead has continued to seek dismissal of that claim in light of the Supreme Court's intervening decision in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), because Beazer's contribution claim has not been brought "during or following any civil action" under CERCLA §106 or §107 as required by §113(f)(1).[1] Both the import of *Cooper* and the facial defect in Beazer's final claim are undisputed. However, this Court declined to apply *Cooper*, instead concluding that (i) the statutory threshold confirmed by the Supreme Court does not present a jurisdictional issue, and (ii) Mead waived its right to further pursue the "civil action" argument. INTERLOCUTORY ORDER at 6 and 10, respectively. Those decisions place this case at a key crossroads.

If either this Court's jurisdictional ruling or its finding of waiver is incorrect, Beazer has no claim and this case is over. But left to the ordinary course, Mead will be unable to test those conclusions for perhaps as long as two years.[2] Rather, it would first be required to:

(1) propound detailed interrogatories and requests for admissions;

(2) demand and analyze voluminous documentation regarding Beazer's alleged response costs incurred since 1999 (the cut-off for costs considered in the previous trial);

(3) take numerous depositions regarding the site investigation and remediation activities undertaken by Beazer over the past seven years;

---

[1] The INTERLOCUTORY ORDER acknowledges that "[a]lthough the *Aviall* decision was not handed down until December of 2004, Mead raised the identical argument addressed in *Aviall* in this case more than ten years ago upon remand from *Beazer I*." *Id.* at 9.

[2] While it is not possible to project with certainty the course and timing of proceedings should the case remain before this Court, the chart attached as EXHIBIT A provides a rough projection of the categories of activities anticipated and the likely time required in the absence of interlocutory review.

(4) develop intricate expert testimony regarding the propriety of Beazer's site activities, alleged costs, necessity under CERCLA, and consistency with the National Contingency Plan; and

(5) participate in a lengthy trial on both allocation and cost issues.

Only after the significant expense and extended time required for these activities could Mead appeal the dispositive issues of jurisdiction, application of intervening Supreme Court authority and waiver that may well make all of that work and expenditure of resources unnecessary.

The interlocutory review alternative was created to prevent just such inefficiencies. Congress enacted 28 U.S.C. §1292(b) for orders "with the potential for causing a wasted protracted trial if it could early be determined that there might be no liability." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (citing Hearings Before Subcommittee No. 3 of the House Committee on the Judiciary on H.R. 6238, 85th Cong., 2d Sess., ser. 11 at 8, 9 (1958)). In fact, the drafters of §1292(b) "referred specifically to cases in which ***a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action*** " and "to cases involving ***prolonged assessments of damages after determination of liability***…." *Id.* (emphasis added). Mead's motion to dismiss goes straight to Beazer's "right to maintain" an action, and interlocutory review may well avoid a "prolonged," unnecessary "assessment of damages."

This Court is empowered to choose the far more efficient course of interlocutory review because each of the statutory requirements is satisfied. Certification under 28 U.S.C. §1292(b) is proper where: (1) the order involves a controlling question of law; (2) there is substantial ground for a difference of opinion; and (3) an immediate appeal stands to materially advance the ultimate termination of the litigation. *Katz*, 496 F.2d at 754.

1. **THREE CONTROLLING QUESTIONS OF LAW EXIST.**

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755. The term "'controlling' means serious to the conduct of the litigation, either practically or legally." *Id*. The Supreme Court's intervening decision in *Cooper* squarely highlights just such "serious" issues.

Mead presented three independent reasons why *Cooper* must apply: (1) CERCLA §113(f)(1)'s "civil action" prerequisite is jurisdictional and cannot be waived; (2) intervening Supreme Court authority necessarily supersedes any contrary prior ruling; and (3) no waiver has occurred in this case because the Court previously addressed only liability under CERCLA §107(a) and expressly reserved any ruling on the separate §113(f)(1) "civil action" issue. However, the INTERLOCUTORY ORDER rejected each of these arguments. If the Court of Appeals sides with Mead on any one of these points, "final judgment would be entered" in Mead's favor "and the need for a possible trial…would be eliminated." *Royal Ins. Co. of Am. v. K.S.I. Trading Corp.*, Case No. 04-CV-867, 2006 U.S. Dist. LEXIS 40363 at *9 (D.N.J. June 16, 2006). Thus, these issues are more than practically and legally "serious" – they are fully dispositive and readily "controlling" for certification purposes.

2. **EACH CONTROLLING QUESTION PRESENTS SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION.**

"Substantial grounds for difference of opinion exist when there is genuine doubt or conflicting precedent as to the correct legal standard." *Bradburn Parent Teacher Store, Inc. v. 3M*, Case No. 02-7676, 2005 U.S. Dist. LEXIS 15815 (E.D. Pa. July 29, 2005) (quoting *Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 360 (D.N.J. 2001)). This term "refers to the legal standard[s] applied in the decision for which certification is sought and

whether other courts have substantially differed…." *Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J. 1993) (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 282 (E.D. Pa. 1983)). Each of Mead's arguments in favor of applying *Cooper* satisfies this standard.

### a. Substantial Ground For Difference Of Opinion Exists As To Whether The *Cooper* Issue Is Jurisdictional.

The INTERLOCUTORY ORDER does not dispute the fact that, if applied, the legal holding in *Cooper v. Aviall* would require the dismissal of Beazer's sole remaining claim. Instead, the Court concluded that "rather than identifying a jurisdictional threshold, *Aviall* instead recognized a condition constituting an element of a claim for relief under §113(f)(1)." *Id.* at 6. To reach that conclusion, the Court primarily relied on *Arbaugh v. Y & H Corporation*, ___ U.S. ___, 127 S. Ct. 1235 (2006), which held that a minimum employee threshold established in Title VII of the Civil Rights Act was not jurisdictional because Congress did not "clearly state" the requirement to be jurisdictional. But Title VII's jurisdictional provision fundamentally differs from CERCLA's.

The jurisdictional provision of Title VII provides that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of ***actions brought under*** this title." 42 U.S.C. §2000e-5(f)(3) (emphasis added). The key phrase "actions brought under" connotes claimants' ability to invoke federal jurisdiction of their own accord – by simply filing an "action." In contrast, CERCLA §113(b) expressly restricts jurisdiction to actual "***controversies arising under***" CERCLA. 42 U.S.C. §9613(b) (emphasis added). The phrase "controversies arising under" establishes a substantive

jurisdictional requirement that not every "action" asserted can satisfy. Rather, an action must establish a legitimate CERCLA "controversy" to create §113(b) jurisdiction.[3]

Indeed, the very term "controversy" is replete with jurisdictional meaning.[4] Controversy derives its ordinary legal meaning from the case-or-controversy requirement that forms the bedrock of federal judicial power. See U.S. CONST. ART. II, § 2. The constitutional requirement for a controversy establishes a federal court's jurisdiction to hear the matter before it. *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 94-95 (1998) (holding that jurisdiction is a threshold matter that "'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'" when considering whether a party has standing under the case-or-controversy requirement) (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (the case-or-controversy requirement of Article II serves to identify disputes that are properly resolved through the judicial process). As the Third Circuit recognized in *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992), there must be a "factual predicate for reasoned adjudication…." That is precisely what Beazer admittedly lacks: the factual predicate of any underlying "civil action" as required by CERCLA §113(f)(1). On this critical point there is absolutely no substantive controversy.

That reading of CERCLA §113(b) is fully consistent with the broad jurisprudence requiring dismissal for lack of subject matter jurisdiction where a claim is "insubstantial,

---

[3] One apparent reason for this difference is the innately complex nature of CERCLA claims, which typically involve difficult factual proofs, substantial sums and numerous parties. It is quite reasonable to presume that Congress meant to carefully circumscribe the opportunities to bring such taxing claims to only those cases actually presenting a viable possibility of recovery.

[4] The term "controversy" is not defined in 42 U.S.C. §9613(b). But legal terms are presumed to convey their ordinary legal meaning when used by Congress in a statute. See *Bradley v. United States*, 410 U.S. 605, 609 (1973); *In re Reading Co.*, 900 F. Supp. 738, 748 (D. Pa. 1973). This cannon of construction has "special force when...there is no persuasive evidence" to the contrary. *United Technologies Corp. v. Browning-Ferris Indus.*, 33 F.3d 96, 99 (1st Cir. 1994).

implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974); see also *Growth Horizons, Inc. v. Delaware County Pennsylvania*, 983 F.2d 1277, 1280-81 (3d Cir. 1993). It is also supported by those courts which have expressly deemed §113(f)(1)'s "civil action" requirement to be jurisdictional. See *Western Reserve Properties Corp. v. Shell Oil Co.*, 358 F.3d 678, 684 (9th Cir. 2003) (*Cooper* issue is a "jurisdictional question"); *Consolidated Edison v. UGI Utilities*, 423 F.3d 90 (2d Cir. 2005) (ordering briefing on the *Cooper* issue to directly resolve a jurisdictional question rather than remanding for factual review by the district court); and *Esso Standard Oil v. Rodrigues-Perez*, Case No. 01-2012, 2005 U.S. Dist. LEXIS 4267 (D.P.R. 2005) (finding that the *Cooper* decision "effectively deprived the court of jurisdiction to consider Esso's CERCLA contribution claim"), *aff'd*. Case No. 05-1722, 2006 U.S. App. LEXIS 14628 (1st Cir. June 14, 2006) (acknowledging the district court's holding that "there never was subject matter jurisdiction over Esso's CERCLA claim," but noting that the appellate court was "not called upon to decide" this issue). At the very least, this body of divergent authority creates the requisite grounds for certification.[5]

**b. Substantial Precedent Indicates That The Intervening *Cooper* Decision Supplants All Prior Inconsistent Rulings.**

This Court also concluded that the MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (April 14, 1996) and subsequent MEMORANDUM ORDER (July 8, 1996) adopting that Report still govern Beazer's §113(f)(1) claim notwithstanding the Supreme Court's

[5] Mead also disagrees with the INTERLOCUTORY ORDER'S assertion that the text of *Cooper* proves that the "civil action" issue is not jurisdictional. Unlike this Court, which has only a patently deficient §113(f)(1) claim before it, the *Cooper* court was also faced with a separate CERCLA §107 claim that was arguably plead and preserved. Indeed, while dismissing Aviall's similar §113(f)(1) claim, the Supreme Court specifically held that "[t]he §107 claim and the preliminary waiver question merit full consideration by the courts below." 543 U.S. at 169. Thus, in *Cooper*, there was no doubt that CERCLA jurisdiction existed due to Aviall's §107 allegations, and the absence of a jurisdictional dismissal is unremarkable. No such jurisdictional fallback exists in this case.

intervening decision in *Cooper*. INTERLOCUTORY ORDER at 9-10. Presuming that the Magistrate's Report and subsequent Order actually reached and resolved the "civil action" issue (which Mead disputes), there is a legitimate legal issue as to whether an earlier holding that contradicts intervening Supreme Court authority can stand. The INTERLOCUTORY ORDER'S implicit conclusion on this point is essentially a decision to prefer "law of the case" principles over supervening authority.

Numerous appellate opinions disagree with that approach and confirm that prudential efficiency doctrines (like law of the case) necessarily give way to contrary appellate authority. See, *e.g.*, *Planned Parenthood of S.E. Pa. v. Casey*, 947 F.2d 682, 698 (3d Cir. 1991) ("[A] change [by the Supreme Court] in the legal test or standard governing a particular area is a change binding on lower courts that makes results reached under a repudiated legal standard no longer binding."); *Zichy v. City of Philadelphia*, 590 F.2d 503, 508 (3d Cir. 1979) (recognizing "a duty to apply a supervening rule of law despite…prior decisions to the contrary when the new legal rule is valid and applicable to the issues of the case") (citing *Bradley v. School Bd. of Richmond*, 416 U.S. 696 (1974)); and *United Artists Theater Circuit, Inc. v. Warrington Twp.*, 316 F.3d 392, 397 (3d Cir. 2003) (finding that preceding contrary opinions do not govern where "a supervening new law has been announced").[6] If these cases govern, as Mead believes, then

[6] See also *CPC Int'l., Inc. v. Northbrook Ins. Co.*, 46 F.3d 1211 (1st Cir. 1995) (confirming district court's decision to "reexamine a previous ruling when 'controlling authority has since made a contrary decision of the law applicable to such issues…'") (citing *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991)); *Ad-Vantage Telephone v. GTE Directories Corp.*, 943 F.2d 1511, 1520 (11th Cir. 1991) (holding that prior rulings and appellate mandates are not governing where "an intervening change in the controlling law dictates a different result"); *Pambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985) ("[A]n appellate decision on an issue must be followed…unless the presentation of new evidence or an intervening change in the controlling law dictates a different result…."); MOORE'S FED. PRACTICE (3rd Ed.) §134.21[3][b] (confirming that when "a higher court to which the court owes obedience issues an opinion directly on point and irreconcilable with the earlier decision, the court is to disregard the law of the case and is to apply the new precedent").

*Cooper* applies to Beazer's §113(f)(1) claim regardless of any contrary prior ruling and this case must be dismissed. That fundamental disagreement creates ample grounds for certification.

**c. The 1996 Magistrate's Report And Subsequent Order Leave Substantial Ground To Dispute Whether The "Civil Action" Issue Was Ever Resolved In The First Place.**

There is also "substantial ground for a difference of opinion" regarding the legal effect of this Court's limited determination of "responsible party" status under CERCLA §107(a) in 1993 and the separate question of whether Beazer can satisfy CERCLA §113(f)(1)'s express "civil action" prerequisite. As the Third Circuit previously noted in this case, evaluation of Beazer's sole remaining claim for contribution under CERCLA §113(f)(1) involves a two-step process:

> A CERCLA contribution action consists of determining which parties are liable under CERCLA and apportioning the liable parties' shares in an equitable manner. *See* 42 U.S.C. §9607(a) & 9613(f)(1)…. Here, the first phase was uncontested: Mead, Beazer and KII are each liable as current or former owners and operators of the Woodward Coke Plant. *See* 42 U.S.C. §9607(a)(1)…. Whether a party is liable and which costs are recoverable are questions governed by CERCLA's liability provision, 42 U.S.C. §9607.

*Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 438-39 (3d Cir. 2005), *cert. den.* ___ U.S. ___, 126 S. Ct. 1040 (2006) ("*Beazer II*"); see also *id*. at 432 n.2 ("There is no dispute that Beazer, Mead, and KII are each responsible parties as defined by CERCLA, 42 U.S.C. §9607(a). Each entity has owned and operated the Woodward Facility, and hazardous substances were disposed of at the facility during each ownership period. *See id*. at §9607(a)(2).") As the Third Circuit expressly recognized, the second phase of this analysis – which has been remanded for further proceedings following the Court of Appeals' most recent reversal – is governed by a separate section of the statute: "The contribution provision [is set forth in] section 9613(f)(1)…." *Beazer II*, 412 F.3d at 439.

A review of the relevant case history clearly demonstrates that, while the initial §107(a) "responsible party" ruling is no longer contested by Mead, the second category of issues arising under CERCLA §113(f)(1) still remain to be decided. Back in 1992, the parties filed cross-motions for summary judgment addressing the state-law contract claim (Count III) as well as the federal statutory claims asserted under CERCLA §§ 107(a) and 113(f)(1) in Counts I and II.[7] Beazer's limited motion with respect to its CERCLA claims sought summary judgment declaring that Mead is a "liable person" based on four statutory factors under CERCLA §107(a):

a) the coke plant is a "Facility" under the meaning of CERCLA;

b) there has been a release or threatened release of hazardous substances from the coke plant;

c) the release or threatened release caused Beazer to incur response costs; and

d) while Mead owned or operated the coke plant hazardous substances were disposed of at and released from the coke plant.

MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF, BEAZER EAST, INC. (November 23, 1992) at 3. Beazer did not then – and never has – sought summary judgment regarding the separate "civil action" statutory prerequisite in CERCLA §113(f)(1).[8]

Following the initial summary judgment briefing, this Court found that the purchase agreement required Beazer to assume all liabilities for the alleged response costs in this case,

---

[7] The AMENDED COMPLAINT filed by Beazer on June 14, 1991 asserted nine counts seeking to hold Mead liable for alleged environmental costs incurred in conjunction with Beazer's clean-up at the Woodward facility. In a previous decision, this Court granted Mead's motion to dismiss six of these claims (Counts IV through IX) asserting various state-law theories as well as any federal common law claim for contribution in Count I. See MEMORANDUM AND ORDER (October 15, 1992) adopting MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (July 29, 1992).

[8] As the Supreme Court held in *Cooper*, a party in Beazer's position is prohibited from maintaining an action for contribution under CERCLA §113(f)(1). Since Beazer admits that its contribution claim is not asserted "'during or following' any civil action under CERCLA §106 or §107(a)...," it cannot possibly satisfy the express statutory threshold for bringing such an action. *Cooper*, 543 U.S. at 160.

which also provided Mead with a complete defense to any CERCLA liability. See MEMORANDUM ORDER (June 30, 1993) adopting MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (May 12, 1993). With respect to the underlying CERCLA "liability" issue, the Court subsequently summarized the status as follows:

> The ***42 U.S.C. §9607 prerequisites*** which are necessary for Beazer to maintain its instant claim of contribution against Mead under 42 U.S.C. §9613(f) properly have been established pursuant to the proceedings resulting in the affirmance of the magistrate judge's report and recommendation of May 12, 1993, wherein Mead was determined ***to be a responsible party under 42 U.S.C. §9607***.

MEMORANDUM ORDER (July 8, 1996) at p. 1 (emphasis added).

Beazer appealed the award of summary judgment in favor of Mead, and the Third Circuit later reversed the original decision related to the indemnity and assumption of liability provisions in the contract. *Beazer East, Inc. v. The Mead Corp.,* 34 F.3d 206, 219 (3d Cir. 1994) ("*Beazer I* ") (case remanded "for further proceedings on Beazer's contribution claim"). The only issues remaining for consideration arose under the two counts in the AMENDED COMPLAINT asserting federal statutory claims under CERCLA: (1) a contribution claim under §§ 113(f)(1) and 107(a) in Count I; and (2) a direct "cost recovery" claim under §107(a) in Count II. See AMENDED COMPLAINT at ¶¶ 35 and 43. On remand from *Beazer I,* Mead filed a motion for partial summary judgment to clarify the federal law issues and confirm that the state-law contract claim was no longer part of the case. Beazer did not file any motion at this juncture seeking, for example, a ruling in its favor on the "civil action" prerequisite in CERCLA §113(f)(1). In contrast, Mead sought an affirmative determination on this issue. See THE MEAD CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR ADJUDICATION (September 19, 1995). Mead highlighted the "during or following any civil action" statutory threshold in §113(f)(1), and has consistently argued this issue throughout the course of the proceedings. Indeed, the INTERLOCUTORY ORDER

expressly acknowledges that "[a]lthough the *Aviall* decision was not handed down until December of 2004, Mead raised the identical argument addressed in *Aviall* in this case more than ten years ago upon remand from *Beazer I*." *Id.* at 9.

Ultimately, the Magistrate characterized Mead's persistence on this issue as follows:

> Specifically, Mead asserts that the language in §9613(f) to the effect that a claim for contribution may be made "during or following any civil action" pursuant to §9607, makes a claim pursuant to §9613(f) dependent upon a §9607 claim…. ***The court understands Mead's argument that a §9607 claim is a prerequisite for a contribution claim under §9613(f), although the court has no occasion to rule on this question, and makes no ruling in this respect.*** The court does not understand, however, how this alleged relationship between §9607 and §9613(f) would alter the conclusion that RCRA costs are recoverable as response costs under CERCLA.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (April 16, 1996) at 6-7 (emphasis added). That Report also confirmed that the contract claim (Count III) was no longer at issue, stating that "[t]he claims remaining, after rulings on a motion to dismiss and summary judgment, are Beazer's claims for contribution pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, as amended (CERCLA), 42 U.S.C. 9601, et seq." *Id.* at 1-2.

Following the April 16, 1996 REPORT AND RECOMMENDATION, Mead continued to press the issue of Beazer's inability to satisfy the "during or following any civil action" statutory prerequisite under CERCLA §113(f)(1) as well as the flaws inherent in Beazer's attempt to pursue a separate claim under §107(a). On the latter issue, this Court's July 8, 1996 MEMORANDUM ORDER expressly precluded Beazer from further pursuing any CERCLA §107(a) theory of recovery:

> To the extent that the motion seeks to preclude Beazer from further maintaining an ongoing [CERCLA §107] theory of recovery against Mead in the instant context, the motion is granted.

MEMORANDUM ORDER (July 8, 1996) at p. 1. While this Court concurred with the Magistrate's determination regarding potential recoverability of RCRA costs under CERCLA, it did ***not*** address (or even mention) the separate issue of the "during or following any civil action" requirement as to which the Magistrate ***expressly declined*** to issue any ruling.

At a minimum, the written record in this case presents a straightforward legal question of whether there has been any final ruling on the "during or following any civil action" question from which Mead could have appealed. The Court simply referred all subsequent proceedings under §113(f)(1) for trial before the Magistrate (over Mead's objection), and that delegation and subsequent judgment have since be reversed by the Third Circuit in *Beazer II* and the case remanded back for appropriate disposition.

### 3. LIKELIHOOD OF MATERIALLY ADVANCING THE LITIGATION

On the final issue to be considered in certifying an Order for interlocutory review, the Third Circuit has confirmed that 28 U.S.C. §1292(b) was meant to avoid "the wasted effort of a possibly protracted litigation over damages where there might be no liability." *Katz*, 496 F.2d at 754. This case fits that mold exactly. Absent interlocutory review, this lengthy case will likely see two more anniversaries as the parties conduct comprehensive written discovery, take numerous depositions, identify appropriate experts, deal with highly technical expert reports and testimony, file further rounds of briefing and conduct a multi-week trial. All of that work would be done "where there might be no liability" because Beazer's final claim has been directly invalidated by the Supreme Court in *Cooper*.

Even Beazer acknowledges that significant effort would be required to litigate this case. In the January 27, 2006 JOINT STATUS REPORT AND PROPOSED CASE MANAGEMENT ORDER ("PROPOSED CMO"), Beazer proposed setting aside nine months for allocation discovery followed by a twelve-day allocation trial. See *id.* at 9. But Beazer's proposal describes only half

of the work to be done, and is overly optimistic in even that limited description.[9] The primary defect in Beazer's projection is that it focuses solely on allocation, which is not the only issue left to be resolved. This Court also must face the complex questions of whether Beazer's substantial site remediation costs incurred over the past seven years are recoverable under CERCLA. During February 2002, the Court held a three-day trial and subsequently approved $4,805,138 of Beazer's alleged response costs incurred through December 31, 1999, most of which involved the initial site investigation and other preliminary activities. Subsequent physical remediation work conducted over the past seven years, as well as ongoing site activities, will involve much more complex areas of inquiry and substantially greater alleged costs.

That significant change will necessitate a comprehensive assessment of Beazer's recent actions and a critical review of: (1) the propriety of Beazer's key remedial decisions; (2) the necessity for and cost effectiveness of the additional work; (3) the exact conditions giving rise to specific costs and related causation issues; (4) Beazer's compliance with the National Contingency Plan; and (5) the adequacy of Beazer's cost documentation. To fully assess those issues, Mead will need to request, review and synthesize all supporting documents, depose each person with significant involvement, engage technical experts to carefully evaluate all relevant issues and prepare highly-detailed expert reports, conduct expert depositions, and fully brief the Court on key issues prior to the extensive trial which will be required. Such efforts will consume at least as much time as the allocation work which Beazer optimistically projected would require nine months. Given the breadth and magnitude of Beazer's activities, the anticipated volume of

[9] For instance, Beazer proposes only ninety days ***total*** for "supplemental fact discovery." PROPOSED CMO at 8. That is barely sufficient to conduct a single round of complex written discovery requests, responses and clarifications, let alone to produce and review documents, make supplemental requests and then schedule and conduct depositions.

documentation and the technical nature of the required remedial analysis, cost recovery issues likely will consume at least 15 additional trial days.[10]

Accordingly, Mead estimates that approximately two years of intensive litigation would be required to prepare and present both the allocation and cost recovery facets of this case if interlocutory review is denied. See EXHIBIT A. Those efforts would culminate in a two-stage trial lasting at least one month during 2008. Such litigation would significantly weigh on the resources of this Court and impose a substantial cost to the parties. The alternative of interlocutory review is much more promising. If the Court of Appeals agrees to review the dispositive issues that determine whether *Cooper* applies to Beazer's final claim, "the district court and the parties would be saved the needless expenditure of time and money in litigation issues that the Court of Appeals may vacate or reverse upon ultimate appeal." *Russ-Tobias v. Penn. Bd. of Probation*, Case No. 04-0270, 2006 U.S. Dist. LEXIS 8062 at *101 (E.D. Pa. March 2, 2006). Thus, interlocutory review stands to materially advance – and perhaps finally end – this fifteen-year-old case.

---

[10] The information generated by Beazer's site work may also impact the parties' allocation arguments. For example, Beazer may well have discovered new contaminants not previously implicated or discovered that different contaminants actually drove the remedial work. Similarly, additional areas of contamination may have been found or further sampling may have shed new light on actual contributions to the site. Thus, while some of the cost recovery and allocation efforts may be able to proceed simultaneously, many issues will require analysis in succession.

## CONCLUSION

Since interlocutory appellate review will avoid the conduct of potentially needless litigation, and this case fully satisfies each of the criteria set forth in 28 U.S.C. §1292(b), Mead respectfully requests certification of the Court's July 13, 2006 MEMORANDUM AND ORDER OF COURT, and further requests that the instant proceedings be stayed pending interlocutory review.

Respectfully submitted,

/s/ Van Carson
Van Carson, Esq. (OH Sup. Ct. #0001324)
Dale E. Stephenson, Esq. (OH Sup. Ct. #0020688)
William V. Shaklee, Esq. (OH Sup. Ct. #0075507)
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower, 127 Public Square
Cleveland, Ohio 44114-1304
(216) 479-8500

/s/ David E. White
David E. White, Esq.
THORP, REED & ARMSTRONG
One Oxford Center, 14th Floor
Pittsburgh, Pennsylvania 15219
(412) 394-2343

Attorneys for The Mead Corporation

**EXHIBIT A**

| Litigation Event | Time Allotted |
|---|---|
| Filing of written discovery requests; responses; production of documents | 4 months |
| Deposition of fact witnesses; FRCP 30(b)(6) depositions | 3 months |
| Expert review of documents and deposition testimony; collection of supplemental factual information | 3 months |
| Preparation of expert reports | 2 months |
| Preparation of rebuttal expert reports | 2 months |
| Deposition of experts | 2 months |
| **Total Discovery Time** | **16 months** |
| Filing of allocation briefs; responses; replies | 2 months |
| Final allocation pre-trial motions | 1 month |
| Trial on equitable allocation | 12 days |
| Filing of cost recovery briefs; responses; replies | 2 months |
| Final cost recovery pre-trial motions | 1 month |
| Cost recovery trial | 15 days |
| **Total Time For Trial Preparation and Trial** | **7 months** |

**CERTIFICATE OF SERVICE**

Copies of the foregoing THE MEAD CORPORATION'S BRIEF IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW was served on this 27th day of July, 2006 using the CM/ECF system which will send notification of such filing to the following:

Mark D. Shepard, Esq.
D. Matthew Jameson III, Esq.
K. Mark Hall, Esq.
Melissa L. Evans, Esq.
BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.
Two Gateway Center, Eighth Floor
Pittsburgh, Pennsylvania 15222

I hereby certify that I have mailed by United States Postal Service copies of the foregoing THE MEAD CORPORATION'S BRIEF IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW to the following non-CM/ECF participants:

Jill M. Blundon, Esq.
BEAZER EAST, INC.
One Oxford Center, Suite 3000
Pittsburgh, Pennsylvania 15219

Counsel for Beazer East, Inc.

John E. Frey, Esq.
WILDMAN, HARROLD, ALLEN & DIXON
225 West Wacker Drive, 30th Floor
Chicago, Illinois 60606-1225

Counsel for Koppers Industries, Inc.

/s/ David E. White
One of the Attorneys for
The Mead Corporation